## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | |
|---|---|
| MICHAEL LACY, Individually and for Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| OAK HILL CONTRACTORS, LLC. | Rule 23 Class Action<br>FLSA Collective Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Michael Lacy (Lacy) brings this class and collective action to recover unpaid wages and other damages from Oak Hill Contractors, LLC (Oak Hill) for violations of the Fair Labor Standards Act (FLSA), the Illinois Minimum Wage Law (IMWL), and Illinois Wage Payment and Collection Act (IWPCA).

2.     Oak Hill employed Lacy as one of its Hourly Employees (defined below) in Illinois.

3.     Oak Hill pays Lacy and its other Hourly Employees on an hourly basis.

4.     Lacy and the other Hourly Employees regularly work more than 40 hours a workweek.

5.     But Oak Hill does not pay Lacy and its other Hourly Employees for all their hours worked, including overtime hours worked.

6.     Instead, Oak Hill requires Lacy and its other Hourly Employees to arrive on site and suit out in personal protective equipment, including, hard hat, reflective clothing, ear plugs, safety glasses, metatarsal boots, radio, and tool belt, prior to the beginning of their scheduled shifts.

7.     Likewise, Lacy and the other Hourly Employees must inspect their machinery and equipment, including checking hydraulics, fluid levels, tire treads, tire pressure, and fuel levels, after arriving onto Oak Hill's and its client's premises, prior to the beginning of their scheduled shifts.

8.     And Lacy and the other Hourly Employees must move and store their machinery and equipment, remove their personal protective gear, and wash up, after the end of their scheduled shifts, prior to leaving Oak Hill's and its client's premises (¶¶ 6-8 together, Oak Hill's pre/post shift off the clock policy).

9.     But Oak Hill does not pay Lacy and its other Hourly Employees for the time they spend putting on and removing their personal protective equipment, inspecting and storing their machinery and equipment, and washing-up "off the clock," before and after their scheduled shifts.

10.     Oak Hill's uniform pre/post shift off the clock policy violates the FLSA and IMWL by depriving Lacy and the other Hourly Employees of overtime wages for all overtime hours worked.

11.     Likewise, Oak Hill's uniform pre/post shift off the clock policy violates the IWPCA by depriving Lacy and the other Hourly Employees of all their earned wages (at their agreed hourly rates) for all hours worked.

12.     Oak Hill additionally requires its Hourly Employees to "clock out" for 30 minutes a workday for a "meal break," regardless of whether they actually received a *bona fide*, uninterrupted meal break (Oak Hill's "meal deduction policy").

13.     Thus, Oak Hill does not pay its Hourly Employees for that time.

14.     But Lacy and the other Hourly Employees do not actually receive *bona fide* meal breaks.

15.     Instead, Oak Hill requires Lacy and its Hourly Employees to remain on-duty and perform their regular job duties throughout their shifts, including during their so-called "meal breaks," and Oak Hill continuously subjects them to work interruptions during their attempted "meal breaks."

16.     And Oak Hill's uniform meal deduction policy violates the FLSA and the IMWL by depriving Lacy and the other Hourly Employees of overtime wages for all overtime hours worked.

17.    Likewise, Oak Hill's uniform meal deduction policy violates the IWPCA by depriving Lacy and the other Hourly Employees of all their earned wages (at their agreed hourly rates) for all hours worked.

18.    In addition to failing to pay its Hourly Employees for all their hours worked, Oak Hill also fails to pay them overtime wages at the required premium rates based on all remuneration.

19.    Instead, Oak Hill pays Lacy and its other Hourly Employees non-discretionary excavation bonuses and lump sum payments for training courses.

20.    And Oak Hill knows these bonuses and training pay must be, but are not, included in Lacy's and its Hourly Employees' "regular rates" of pay for overtime purposes (Oak Hill's "bonus pay scheme").

21.    Oak Hill's bonus pay scheme violates the FLSA and IMWL by depriving Lacy and the other Hourly Employees of overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration received – for hours worked in excess of 40 a week.

## JURISDICTION AND VENUE

22.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

23.    The Court has supplemental jurisdiction over the Illinois state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same common nucleus of operative facts as the FLSA claims asserted.

24.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Oak Hill maintains its corporate headquarters in this District and Division.

25.    Specifically, Oak Hill maintains its corporate headquarters in Ewing, Franklin County, Illinois, which is in this District and Division.

## PARTIES

26.     Lacy worked for Oak Hill as an equipment operator in Illinois from approximately January 2022 through February 2024.

27.     Throughout his employment, Oak Hill did not pay Lacy for all hours worked, including overtime hours worked, at the required and/or agreed upon rates – based on all remuneration received.

28.     Lacy's written consent is attached as **Exhibit 1**.

29.     Lacy brings this class and collective action on behalf of himself and all other similarly situated workers who Oak Hill paid under its pre/post "off the clock" policy, meal deduction policy, and/or bonus pay scheme.

30.     Oak Hill failed to pay each of these employees for all hours worked, overtime hours worked, at the required premium rate – based on all remuneration – in willful violation of the FLSA and in violation of the IMWL and IWPCA.

31.     The FLSA Collective of similarly situated employees consists of:

> **All hourly paid equipment operators and similar employees who worked for or on behalf of Oak Hill at any time during the past three years through final resolution of this matter (the "FLSA Collective Members").**

32.     Lacy also seeks to represent a class of workers under the IMWL pursuant to Federal Rule of Civil Procedure 23.

33.     The IMWL Class is defined as:

> **All hourly paid equipment operators and similar employees who worked for or on behalf of Oak Hill in Illinois at any time during the past three years through final resolution of this matter (the "IMWL Class Members").**

34.     Lacy also seeks to represent a class of workers under the IWPCA pursuant to Federal Rule of Civil Procedure 23.

4

35.    The IWPCA Class is defined as:

> **All hourly paid equipment operators and similar employees who worked for or on behalf of Oak Hill in Illinois at any time during the past 10 years through final resolution of this matter (the "IWPCA Class Members").**

36.    The FLSA Collective Members, IMWL Class Members, and IWPCA Class Members are collectively referred to as the "Hourly Employees."

37.    Oak Hill is a limited liability company headquartered in Ewing, IL.

38.    Oak Hill may be served through its registered agent: **Joshua D. Burkholder, 20245 Ewing Rd., Ewing, IL 62836**, or wherever he may be found.

### FLSA COVERAGE

39.    At all relevant times, Oak Hill was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40.    At all relevant times, Oak Hill was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

41.    At all relevant times, Oak Hill was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because they had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, radios, hardhats, bull dozers, and personal protective equipment - that have been moved in or produced for commerce.

42.    At all relevant times, Oak Hill has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

43.    At all relevant times, Lacy and the other Hourly Employees were Oak Hill's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

44.     At all relevant times, Lacy and the Hourly Employees were engaged in commerce or in the production of goods for commerce.

45.     Oak Hill uniformly failed to pay Lacy and its other Hourly Employees for all hours worked, including those worked in excess of 40 a workweek.

46.     Oak Hill uniformly failed to pay Lacy and its other Hourly Employees at the required premium – based on all remuneration – for all hours worked in excess of 40 a workweek.

47.     Oak Hill applied its illegal pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme to the Hourly Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

48.     As a result of Oak Hill's uniform pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme, Lacy and the other Hourly Employees did not receive overtime wages at the premium rates required by the FLSA for all overtime hours worked.

49.     Oak Hill did not pay Lacy and its other Hourly Employees at least 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

50.     Oak Hill's pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme therefore violate the FLSA. 29 U.S.C. § 207(a) & (e).

### FACTS

51.     Oak Hill is an "earth moving and site works company located in southern Illinois" that provides services including mass excavation, site work, and land clearing.[1]

52.     To meet its business objectives, Oak Hill hires workers, like Lacy and the other Hourly Employees.

---

[1] https://www.oakhillcontractorsllc.com/ (last accessed July 2, 2024).

6

53.     Oak Hill uniformly classifies these employees as non-exempt and pays them on an hourly basis.

54.     While exact job titles and precise job duties may differ, Lacy and the other Hourly Employees are all subject to Oak Hill's same or similar illegal policies – its illegal pre/post shift "off the clock" policy, meal deduction policy, and/or bonus pay scheme – while performing the same or similar work.

55.     For example, Lacy worked for Oak Hill as an Equipment Operator assigned to provide services to Oak Hill's mining clients, at Viper Mine from approximately July 2022 until January 2023, Sugar Camp Mining Complex from approximately January 2023 until November 2023, and Mach No. 1 Mine from approximately December 2023 until February 2024.

56.     As an Equipment Operator, Lacy's job duties included operating haul trucks, skid-steers, tractors, and bulldozer to dig ponds, move, and fill in dirt as necessary to facilitate coal mining operations.

57.     Lacy's job duties likewise included donning safety gear and protective clothing, checking his equipment's tires, hydraulics, and fuel levels, and doffing his safety gear and protective clothing and washing-up, before and after his scheduled shifts on Oak Hill's and its clients' premises.

58.     Throughout his employment, Oak Hill classified Lacy as non-exempt and paid him on an hourly basis.

59.     Indeed, Oak Hill agreed to pay Lacy $21.00 an hour for his first 40 hours worked plus overtime for his hours worked in excess of 40 a workweek.

60.     Throughout his employment, Oak Hill required Lacy's "on the clock" hours worked to be reported to Oak Hill through paper timesheets possessed and filled out by his crew leader, not Lacy.

61.     Throughout his employment, Lacy typically worked 8-10+ hours a day for 5-6 days a workweek (40 to 60+ hours a workweek).

62.     But throughout his employment, Oak Hill did not pay Lacy for all of his hours worked.

63.     Instead, throughout his employment, Oak Hill subjected Lacy to its uniform, illegal pre/post shift "off the clock" policy.

64.     Specifically, Oak Hill required Lacy to dress out in his protective clothing and safety gear (including Hard hat, reflective clothing, ear plugs, goggles, metatarsal boots, radio, and tool belt), and inspect his equipment (including making sure tires are not overworn, checking hydraulics, checking fuel levels, etc.), all "off the clock," without compensation.

65.     This took Lacy approximately 30 minutes each workday.

66.     Lacy could not perform his job duties as an Equipment Operator in accordance with Oak Hill's (and its clients') policies, procedures, and expectations without this protective clothing, safety gear, and equipment.

67.     Lacy could not safely perform his job duties as an Equipment Operator in accordance with Oak Hill's (and its clients') policies, procedures, and expectations without this protective clothing, safety gear, and equipment.

68.     Indeed, much of the safety gear Lacy utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132.

69.     The donning of protective clothing and safety gear and inspection of equipment to ensure its job-readiness are therefore integral and indispensable work duties.

70.     Likewise, Oak Hill required Lacy to remove his safety gear and protective clothing, store his equipment, and wash up each day after his scheduled shift, all "off the clock."

71.     This took Lacy approximately 30 minutes to an hour each workday.

72.     Lacy could not perform his job duties as an Equipment Operator in accordance with Oak Hill's (and its client's) policies, procedures, and expectations without removing his safety gear and protective clothing, storing his equipment, and washing up each day.

73.     Lacy could not safely perform his job duties as an Equipment Operator in accordance with Oak Hill's (and its client's) policies, procedures, and expectations without removing his safety gear and protective clothing, storing his tools and equipment, and washing up each workday.

74.     The removal of his safety gear and protective clothing, storing his equipment, and washing up each day are therefore integral and indispensable work duties for Lacy.

75.     But under its pre/post shift "off the clock" policy, Oak Hill did not compensate Lacy for this time worked.

76.     Thus, as a result of its illegal pre/post shift "off the clock" policy, Oak Hill failed to pay Lacy overtime wages for all his overtime hours worked in violation of the FLSA and IMWL.

77.     And Oak Hill failed to pay Lacy all his earned wages (at his agreed hourly rate) for all his hours worked in violation of the IWPCA.

78.     Additionally, Oak Hill subjected Lacy to its uniform, illegal meal deduction policy.

79.     Specifically, Oak Hill automatically deducted 30 minutes a day from Lacy's recorded work time for so-called "meal breaks."

80.     Oak Hill automatically deducted this time regardless of whether Lacy actually received a *bona fide* meal break.

81.     Thus, Oak Hill did not pay Lacy for that time.

82.     But Lacy did not actually receive *bona fide* meal breaks.

83.     Instead, Lacy was forced to perform his regular job duties throughout his workdays (including during his so-called "meal breaks").

84.    And Oak Hill continuously subjected Lacy to work interruptions during his attempted meal breaks.

85.    Further, throughout his employment, Oak Hill paid Lacy according to its uniform, illegal bonus pay scheme.

86.    Specifically, Oak Hill paid Lacy non-discretionary bonuses when he met specific excavating goals:

| | Lacy, Michael | | |
| --- | --- | --- | --- |
| | Hours | Rate | Oct 5, '22 - Oct 5, 23 |
| **Employee Wages, Taxes and Adjustments** | | | |
| **Gross Pay** | | | |
| Excavation Hourly Wage | 985.5 | 21.00 | 20,207.50 |
| Excavation Overtime | 275.25 | 31.50 | 8,370.75 |
| Training | | | 100.00 |
| Bonus-Excavating | | | 950.00 |
| **Total Gross Pay** | 1,260.75 | | 29,628.25 |

87.    Oak Hill knew these bonuses should have been, but were not, included in Lacy's regular rate of pay for overtime purposes.

88.    As a result, Oak Hill failed to pay Lacy overtime wages at a rate not less than 1.5 times his regular rate of pay – based on *all* remuneration received – for his hours worked in excess of 40 a workweek in violation of the FLSA and IMWL.

89.    Lacy and the other Hourly Employees perform their jobs under Oak Hill's supervision and use materials, equipment, and technology Oak Hill approves and supplies.

90.    Oak Hill requires Lacy and its other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

91.    At the end of each pay period, Lacy and the other Hourly Employees receive wages from Oak Hill that are determined by common systems and methods that Oak Hill selects and controls.

92.    Oak Hill requires Lacy's and its other Hourly Employees' "on the clock" hours worked, as recorded by their supervisor, to be submitted to Oak Hill for approval via weekly timesheets.

93.     But, just as with Lacy, Oak Hill fails to pay its other Hourly Employees for all their hours worked.

94.     Indeed, Oak Hill uniformly subjects its other Hourly Employees to the same or similar illegal pre/post shift "off the clock" policy it imposed on Lacy.

95.     Specifically, just as with Lacy, Oak Hill requires them to dress out in their protective clothing and safety gear (including Hard hat, reflective clothing, ear plugs, goggles, metatarsal boots, radio, and tool belt), and inspect their equipment (including making sure tires are not overworn, checking hydraulics, checking fuel levels, etc.), all "off the clock," without compensation.

96.     And this takes the Hourly Employees approximately 30 minutes each workday.

97.     And Oak Hill requires them to remove their safety gear and protective clothing, store their equipment, and wash up each day after his scheduled shift, all "off the clock."

98.     And like Lacy, much of the safety gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132.

99.     But, like Lacy, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and/or after their scheduled shifts for Oak Hill's predominant benefit.

100.    And, just as with Lacy, Oak Hill does not pay its other Hourly Employees for this work they perform "off the clock."

101.    And, just as with Lacy, these job duties take the other Equipment Operators approximately an hour to an hour and a half to complete each workday.

102.    Oak Hill fails to exercise its duty as Lacy's and the other Hourly Employees' employer to ensure these employees are not performing work "off the clock" on its and its client's premises that Oak Hill does not want performed.

103.    And Oak Hill knows, should know, or recklessly disregards whether Lacy and its other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

104.    Thus, Oak Hill requests, suffers, permits, or allows Lacy and its other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

105.    Despite accepting the benefits, Oak Hill does not pay Lacy and its other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

106.    Thus, under Oak Hill's uniform, illegal pre/post shift off the clock policy, Lacy and the other Hourly Employees are denied overtime pay for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours in violation of the FLSA and IMWL.

107.    And under Oak Hill's uniform, illegal pre/post shift "off the clock" policy, Lacy and the other Hourly Employees are denied earned wages, at the agreed rates, under the IWPCA.

108.    Oak Hill uniformly subjects its Hourly Employees to the same illegal meal deduction policy it imposed on Lacy.

109.    Specifically, just as with Lacy, Oak Hill automatically deducts 30 minutes a day from its other Hourly Employees' recorded work time (and earned wages) for so-called "meal breaks."

110.    Oak Hill automatically deducts this time regardless of whether its Hourly Employees actually receive full, uninterrupted, 30-minute meal breaks.

111.    Oak Hill simply assumes its Hourly Employees receive *bona fide* meal breaks each shift they work.

112.    But, like Lacy, the other Hourly Employees do not actually receive *bona fide* meal breaks.

113.    Instead, like Lacy, Oak Hill requires its other Hourly Employees to remain on-duty and performing their regular job duties throughout their workday, including during their unpaid "meal breaks."

114.    And, like Lacy, Oak Hill continuously subjects its other Hourly Employees to work interruptions during their unpaid "meal breaks."

115.    Because of these constant work interruptions, the Hourly Employees, like Lacy, are not free to engage in personal activities during their unpaid "meal breaks."

116.    In other words, the Hourly Employees, like Lacy, are not relieved of all their work duties during their unpaid "meal breaks."

117.    Rather, during their unpaid "meal breaks," the Hourly Employees, like Lacy, are forced to remain on duty and perform their job duties and responsibilities.

118.    Thus, the Hourly Employees, like Lacy, routinely spend their unpaid "meal breaks" performing work for Oak Hill's – not their own – predominant benefit.

119.    This unpaid time is compensable under the FLSA and IMWL because Oak Hill knew, or should have known: (1) Lacy and its other Hourly Employees were performing unpaid work during their "meal breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted meal break; (3) they were not completely relieved of all duties during their unpaid meal breaks; (4) they entirely skipped their meal breaks due to work demands; (5) their unpaid meal breaks were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid meal breaks because of constant work interruptions; (7) they remained on Oak Hill's and its clients' premises and/or under Oak Hill's and its clients' supervision during their unpaid meal breaks; and/or (8) they spent their unpaid meal breaks performing their regular job duties for Oak Hill's predominant benefit.

120.    This unpaid time is also compensable under the IWPCA because Oak Hill agreed to pay Lacy and its other Hourly Employees set hourly rates of pay for all hours worked, and Oak Hill failed to pay them their earned wages for the work they performed during these on-duty "meal breaks."

121.    Oak Hill fails to exercise its duty as its Hourly Employees' employer to ensure they are not working during their unpaid "meal breaks."

122.    And Oak Hill knows, should know, or recklessly disregards whether its Hourly Employees, like Lacy, routinely work during their unpaid "meal breaks."

123.    Thus, Oak Hill requested, suffered, permitted, or allowed its Hourly Employees, like Lacy, to work during their unpaid "meal breaks."

124.    Despite accepting the benefits, Oak Hill does not pay its Hourly Employees, like Lacy, for the compensable work they perform during their automatically deducted "meal breaks."

125.    Thus, under its uniform, illegal auto-deduct policy, Oak Hill fails to pay Lacy and its other Hourly Employees overtime pay for on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the IMWL.

126.    Likewise, under its uniform, illegal auto-deduct policy, Oak Hill fails to pay Lacy and its other Hourly Employees earned wages (at their agreed hourly rates) for those on-duty "meal breaks" in violation of the IWPCA.

127.    Finally, Oak Hill also subjects its other Hourly Employees to the same illegal bonus pay scheme it imposed on Lacy.

128.    Specifically, Oak Hill pays its other Hourly Employees non-discretionary bonuses when they meet specific production goals, as well as lump sums for required training.

129.    Oak Hill knows these bonuses and training pay are required to be, but are not, included in its Hourly Employees' regular rates of pay for overtime purposes.

130.     As a result, Oak Hill fails to pay Lacy and its other Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration received – for hours worked in excess of 40 a week, in violation of the FLSA and IMWL.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

131.     Lacy incorporates all other paragraphs by reference.

132.     Lacy brings his claims as a class and collective action under Section 216(b) of the FLSA and Fed. R. Civ. P. 23.

133.     Like Lacy, the other Hourly Employees are victimized by Oak Hill's illegal pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme.

134.     Other Hourly Employees worked with Lacy and indicated they were paid in the same manner, performed similar work, and were subject to Oak Hill's same illegal pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme.

135.     Based on his experience with Oak Hill, Lacy is aware Oak Hill's illegal pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme were imposed on the other Hourly Employees.

136.     And the Hourly Employees are so numerous as to make joinder impracticable.

137.     The Hourly Employees are similarly situated in the most relevant respects.

138.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime compensation – based on all remuneration received.

139.     Rather, the Putative Classes are held together by Oak Hill's pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme which systematically deprive Lacy and the Hourly Employees of proper wages, including required overtime wages, for all hours worked, including hours in excess of 40 in a workweek.

140.    Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

141.    Oak Hill's failure to pay these employees "straight time" and overtime wages at the agreed rates and/or the rates required by the FLSA, IMWL, and/or IWPCA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Hourly Employees.

142.    The IMWL and IWPCA Class Members are similarly denied "straight time" wages (at their agreed hourly rates) for all hours worked when they work fewer than 40 hours in a workweek.

143.    The Hourly Employees are similarly denied overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

144.    The back wages owed to Lacy and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

145.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Oak Hill's records, and there is no detraction from the common nucleus of liability facts.

146.    Therefore, the issue of damages does not preclude class or collective treatment.

147.    Lacy's experiences are therefore typical of the experiences of the other Hourly Employees.

148.    Lacy has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

149.    Like each Hourly Employee, Lacy has an interest in obtaining the unpaid wages owed under federal and Illinois law.

150.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

151.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Oak Hill will reap the unjust benefits of violating the FLSA and Illinois law.

152.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

153.    Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Oak Hill.

154.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

155.    The questions of law and fact that are common to each Hourly Employees predominate over any questions affecting solely the individual members.

156.    Among the common questions of law and fact are:

a.    Whether Oak Hill's pre/post shift "off the clock" policy failed to compensate the Hourly Employees for all hours worked;

b.    Whether Oak Hill's pre/post shift "off the clock" policy deprived the Hourly Employees of overtime compensation when they worked more than 40 hours in a workweek, in violation of the FLSA and IMWL;

c.    Whether Oak Hill's meal deduction policy failed to compensate the Hourly Employees for all hours worked.

d.    Whether Oak Hill's meal deduction policy deprived the Hourly Employees of overtime compensation when they worked more than 40 hours in a workweek, in violation of the FLSA and IMWL;

e.    Whether Oak Hill's bonus pay scheme deprived the Hourly Employees of overtime compensation at not less than 1.5 times their regular rates

17

of pay – based on all remuneration – when they worked more than 40 hours in a workweek, in violation of the FLSA and IMWL;

     f.     Whether Oak Hill failed to pay the Hourly Employees earned wages (at their agreed hourly rates) for all hours worked in violation of the IWPCA;

     g.     Whether Oak Hill's decision not to pay its Hourly Employees all wages and overtime wages due was made in good faith; and

     h.     Whether Oak Hill's FLSA violations were willful.

157.     Lacy knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

158.     Oak Hill's pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme deprived Lacy and the other Hourly Employees of the wages, including overtime wages – based on all remuneration received – they are owed under federal and Illinois law.

159.     There are many similarly situated Hourly Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

160.     The Hourly Employees are known to Oak Hill and can be readily identified and located through Oak Hill's business and personnel records.

### OAK HILL'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

161.     Lacy incorporates all other paragraphs by reference.

162.     Oak Hill knew it was subject to the FLSA's overtime provisions.

163.     Oak Hill knew the FLSA required it to pay non-exempt employees, including the FLSA Collective Members, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

164.    Oak Hill knew each FLSA Collective Member worked more than 40 hours in at least one workweek during the relevant period.

165.    Oak Hill knew it paid its FLSA Collective Members according to its pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme.

166.    Oak Hill knew it had a duty to ensure its FLSA Collective Members were not performing work "off the clock" (without pay).

167.    Oak Hill knew it required its FLSA Collective Members to don and doff safety gear and protective clothing, gather and store tools and equipment, wash-up, and take "meal breaks" "off the clock."

168.    Oak Hill controlled the FLSA Collective Members' "off the clock" procedures.

169.    Oak Hill knew the FLSA Collective Members's mandatory "off the clock" work was a fundamental requirement of their jobs with Oak Hill.

170.    Oak Hill knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs with Oak Hill.

171.    Oak Hill knew its FLSA Collective Members routinely performed this daily, required "off the clock" work for Oak Hill's predominant benefit.

172.    In other words, Oak Hill knew the FLSA Collective Members performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering and storing tools and equipment, and washing-up) "off the clock."

173.    Oak Hill knew its pre/post shift "off the clock" policy and meal deduction policy failed to compensate the FLSA Collective Members for all hours worked, including overtime hours.

174.    Oak Hill knew its bonus pay scheme failed to compensate the FLSA Collective Members for all overtime hours worked at not less than 1.5 times their regular rates of pay – calculated based on all remuneration received.

175.   Oak Hill knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

176.   Oak Hill knowingly, willfully, and/or in reckless disregard carried out its illegal pre/post shift "off the clock" policy, meal deduction policy, and bonus pay scheme that systematically deprived the FLSA Collective Members of overtime wages for their hours worked over 40 a workweek at the required premium rates – based on all remuneration received – in violation of the FLSA.

**OAK HILL'S FLSA VIOLATIONS WERE NOT DONE IN GOOD FAITH**

177.   Lacy incorporates all other paragraphs by reference.

178.   Oak Hill did not seek the advice of counsel regarding its pre/post shift "off the clock" policy.

179.   Oak Hill did not receive advice from counsel regarding its pre/post shift "off the clock" policy.

180.    Oak Hill did not rely on the advice of counsel in deciding to implement its pre/post shift "off the clock" policy.

181.   Oak Hill did not investigate whether its meal deduction policy compensated its Hourly Employees for all hours worked.

182.   Oak Hill did not seek the advice of counsel regarding its meal deduction policy.

183.   Oak Hill did not receive advice from counsel regarding its meal deduction policy.

184.    Oak Hill did not rely on the advice of counsel in deciding to implement its meal deduction policy.

185.   Oak Hill did not investigate whether its meal deduction policy compensated its Hourly Employees for all hours worked.

186.   Oak Hill did not seek the advice of counsel regarding its bonus pay scheme.

187.   Oak Hill did not receive advice from counsel regarding its bonus pay scheme.

20

188.    Oak Hill did not rely on the advice of counsel in deciding to implement its bonus pay scheme.

189.    Oak Hill did not investigate whether its bonus pay scheme compensated its Hourly Employees for all overtime hours worked at the required rate.

190.    Oak Hill's decision not to pay its Hourly Employees overtime compensation for all hours worked in excess of 40 a workweek – based on all remuneration received – was neither reasonable nor made in good faith.

<u>COUNT I</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**
**(FLSA COLLECTIVE)**

191.    Lacy incorporates all other paragraphs by reference.

192.    Lacy brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

193.    Oak Hill violated, and is violating, the FLSA by employing non-exempt employees (Lacy and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration received – for the hours they worked in excess of 40 a workweek.

194.    Oak Hill's unlawful conduct harmed Lacy and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

195.    Accordingly, Oak Hill owes Lacy and the other FLSA Collective Members the difference between the rate actually paid and the required overtime rate.

196.    Because Oak Hill knew, or showed reckless disregard for whether, its unlawful pay policies violated the FLSA, Oak Hill owes these wages for at least the past 3 years.

197.    Oak Hill is also liable to Lacy and the other FLSA Collective Members for an additional amount equal to all their unpaid wages as liquidated damages.

198.    Finally, Lacy and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
### PURSUANT TO 820 ILCS 105/1, *ET SEQ.*
### (IMWL CLASS)

199.    Lacy incorporates all other paragraphs by reference.

200.    Lacy brings his IMWL claim on behalf of himself and the IMWL Class Members pursuant to FED. R. CIV. P. 23.

201.    The conduct alleged violates the IMWL (820 ILCS 105/1, *et seq.*).

202.    At all relevant times, Oak Hill was an "employer" within the meaning of the IMWL.

203.    At all relevant times, Oak Hill employed Lacy and the IMWL Class Members as covered "employees" within the meaning of the IMWL.

204.    The IMWL requires employers, like Oak Hill, to pay employees, including Lacy and the IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

205.    Lacy and the IMWL Class Members are entitled to overtime pay under the IMWL.

206.    Oak Hill violated, and is violating, the IMWL by failing to pay Lacy and the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 a workweek, including hours worked "off the clock" during these employees' unpaid "meal breaks" and/or before and after their shifts. *See* 820 ILCS 105/4a.

207.    Oak Hill's unlawful conduct harmed Lacy and the IMWL Class Members by depriving them of the overtime wages they are owed.

208.    Accordingly, Lacy and the IMWL Class Members are entitled to recover their unpaid overtime compensation owed from the 3 years prior to the filing of this Complaint, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

**COUNT III**

**FAILURE TO PAY ALL WAGES UNDER THE IWPCA**
**PURSUANT TO 820 ILCS 115/1, *ET SEQ.***
**(IWPCA CLASS)**

209.    Lacy incorporates all other paragraphs by reference.

210.    Lacy brings his IWPCA claim on behalf of himself and the IWPCA Class Members pursuant to FED. R. CIV. P. 23.

211.    The conduct alleged violates the IWPCA (820 ILCS 115/1, *et seq*.).

212.    At all relevant times, Oak Hill was an "employer" within the meaning of the IWPCA.

213.    At all relevant times, Oak Hill employed Lacy and the IWPCA Class Members as covered "employees" within the meaning of the IWPCA.

214.    The IWPCA requires employers, like Oak Hill, to pay employees, including Lacy and the IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

215.    During the course of their employment, Oak Hill agreed to pay Lacy and each IWPCA Class Member an hourly rate for all the hours of work they performed.

216.    Lacy and each IWPCA Class Member accepted Oak Hill's offer.

217.    But during the course of their employment, Oak Hill failed to pay Lacy and the IWPCA Class Members for all the time they worked at the rate(s) Oak Hill agreed to pay them because Oak Hill failed to include time these employees worked "off the clock" during their unpaid "meal breaks" and/or before and after their shifts in their total number of hours worked in a given workweek.

218. Oak Hill violated, and is violating, the IWPCA by failing to pay Lacy and the IWPCA Class Members all their earned wages (at the rate(s) Oak Hill agreed to pay them) for all the hours of work they performed for Oak Hill's benefit, including the work they performed "off the clock" during their unpaid "meal breaks" and/or before and after their shifts.

219. Oak Hill's unlawful conduct harmed Lacy and the IWPCA Class Members by depriving them of the earned wages they earned and are owed.

220. Accordingly, Lacy and the IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rate(s)) owed from the 10 years prior to the filing of this Complaint, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

221. Lacy demands a trial by jury.

## RELIEF SOUGHT

Lacy, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Lacy and his counsel to represent the interests of the Hourly Employees;

d. An Order finding Oak Hill liable to Lacy and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.      An Order finding Oak Hill liable to Lacy and the IMWL Class Members for unpaid overtime wages owed under the IMWL, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

f.      An Order finding Oak Hill liable to Lacy and the IWPCA Class Members for unpaid "straight time" wages owed under the IWPCA, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

g.      A Judgment against Oak Hill awarding Lacy and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, monthly statutory damages, and any other penalties available under the FLSA, IMWL, and IWPCA;

h.      An Order awarding attorney's fees, costs, and expenses;

i.      Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

July 3, 2024

Respectfully submitted,

*/s/ Douglas M. Werman*
One of Plaintiff's Attorneys

Douglas M. Werman
dwerman@flsalaw.com
Maureen A. Salas
msalas@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington St., Ste 1402
Chicago, IL 60602
Phone: (312) 419-1008
Fax: (312) 419-1025

Michael A. Josephson*
mjosephson@mybackwages.com
Andrew W. Dunlap*
adunlap@mybackwages.com
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Ste 3050
Houston, TX 77046
Phone: (713) 352-1100
Fax: (713) 352-3300

Richard J. (Rex) Burch*
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*Pro Hac Vice Application Forthcoming*

**ATTORNEYS FOR LACY AND
THE HOURLY EMPLOYEES**

26